UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>   v.<br><br>MORGAN DOUGLAS JONES<br><br>           Defendant. | NO. CR-08-6044-EFS<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |

A pretrial conference occurred in the above-captioned matter on August 7, 2008, in Richland. Defendant Morgan Douglas Jones was present, represented by James Egan. Assistant United States Attorney Stephanie A. Van Marter appeared on behalf of the Government. Before the Court were several discovery motions, Defendant's oral motion to continue, and Defendant's Motion to Dismiss for Violation of Sixth Amendment Right to Counsel. (Ct. Rec. 33.) This Order serves to memorialize and supplement the Court's oral ruling on Defendant's dismissal motion.

ORDER ~ 1

## I. Background[1]

Defendant was initially charged in various state jurisdictions, including Washington and Idaho, on the same facts that formed the basis for the Indictment. During this time, Defendant was held at Franklin County Jail. The Government then obtained an Indictment against Defendant, charging him with Transportation with Intent to Engage in Criminal Sexual Activity, in violation of 18 U.S.C. § 2423(a). After the Government indicted Defendant, arrangements were made to transport him from state to federal custody.

On July 2, 2008, the Federal Bureau of Investigation transported Defendant from Franklin County Jail to a federal holding cell in Yakima. Special Agent (SA) Jessica Huckemeyer handled Defendant's transport because SA John Ryther, the assigned case agent, was unavailable.

When SA Huckemeyer arrived at the Franklin County Jail, Defendant was not ready for transport. SA Huckemeyer waited while Franklin County Jail personnel brought Defendant to the booking area. Defendant arrived carrying a book, two (2) manilla envelopes marked "legal mail," and various loose papers. Defendant's person and possessions were searched for contraband. During the search, SA Huckemeyer "scanned" the loose papers, noting that they contained various drawings. SA Huckemeyer did not scan any documents contained in the manilla envelopes marked "legal mail."

---

[1] The following background is based on the record and the dismissal hearing testimony of Special Agent Jessica Huckemeyer and Special Agent John Ryther.

ORDER ~ 2

Before SA Huckemeyer left the jail, an unidentified Franklin County Jail corrections officer mentioned that Defendant's manilla envelopes contained items other than legal mail. SA Huckemeyer did not follow up on the officer's comment. Instead, she placed Defendant's possessions in a brown transport bag in preparation for the trip to Yakima.

SA Huckemeyer arrived in Yakima and turned Defendant over to the United States Marshals' custody. After doing so, she opened Defendant's brown transport bag and pulled out the various loose papers and the two (2) manilla envelopes marked "legal mail." Remembering the Franklin County Jail officer's comment, SA Huckemeyer opened one of the manilla envelopes, glanced inside, and extracted a single-paged letter handwritten in pencil. SA Huckemeyer extracted this sheet and no other because it stood out from other documents in the manilla envelope, presumably because the letter was drafted in pencil.

SA Huckemeyer photocopied the letter and the loose papers, returning the originals to the brown transport bag. SA Huckemeyer later placed the copies on SA Ryther's desk with a note stating, "Copies of handwritten letters and drawings Morgan Jones had when leaving the Franklin Co. Jail 7/2/08." At no time did SA Huckemeyer thoroughly review the loose papers or the letter. At no time did SA Huckemeyer review any other documents contained in the two (2) manilla envelopes marked "legal mail."

After returning from annual leave, SA Ryther noticed the photocopies on his desk but did not review them. Later that morning, it came to SA Ryther's attention that the Tri-City Herald published an article stating that Defendant's attorney alleged his client's Sixth Amendment rights

ORDER ~ 3

were violated when certain papers were taken from him during his transfer from state to federal custody.

SA Ryther purchased the Tri-City Herald, read the article, and immediately contacted Assistant United States Attorney (AUSA) Stephanie Van Marter for counsel. AUSA Van Marter advised SA Ryther to seal the photocopies without reviewing them. SA Ryther did so.

## II. Discussion

Defendant alleges his Sixth Amendment rights were violated because the Government intruded into his attorney-client relationship by copying and reviewing legal papers. (Ct. Rec. 34 at 3.) The Government responds that no violation occurred because the FBI copied the loose papers without reviewing them and, therefore, could never have communicated the copies' contents to the prosecution.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have Assistance of Counsel for his defense." U.S. CONST. amend. VI. This right can be meaningfully implemented only if a criminal defendant knows that his attorney-client communications are private and that his lawful trial preparations are secure against unwanted government intrusion, his adversary in the criminal proceedings. *Weatherford v. Bursey,* 429 U.S. 545, 553 n.4 (1997).

To establish that the government violated the Sixth Amendment by improperly invading the province of the attorney-client relationship, a defendant must show that: 1) the government intruded on the attorney-client relationship; and 2) the intrusion substantially prejudiced the defendant. *United States v. Fernandez,* 388 F.3d 1199, 1240 (9th Cir.

ORDER ~ 4

2004); *United States v. Danielson,* 325 F.3d 1054, 1070-71 (9th Cir. 2003).

A. <u>Government Intrusion on the Attorney-Client Relationship</u>

To establish that the government intruded on the attorney-client relationship, a defendant must show, at a minimum, that the intrusion was purposeful, that there was communication of defense strategy to the prosecution, or that the intrusion resulted in tainted evidence. *Fernandez,* 388 F.3d at 1240.

After conducting an *in camera* review of the copied materials, the Court finds that the Government did not intrude on Defendant's attorney-client relationship for several reasons. First, the copied materials did not contain privileged material. Second, even if the materials were privileged, the Government's intrusion was not purposeful. SA Huckemeyer copied the loose papers and letter out of concern that Defendant was inappropriately communicating with the victim; she did not copy the loose papers and letter intending to obtain privileged material. Third, there was no defense strategy contained in the copied materials and therefore no communication of defense strategy to the prosecution. Once SA Ryther became aware that the copied materials may contain attorney-client privileged material, he immediately contacted AUSA Van Marter for counsel, who advised SA Ryther to seal the contents in preparation for an *in camera* review by the Court. AUSA Van Marter never learned the copied materials' contents. And fourth, because there is no intrusion, there is no tainted evidence.

///

ORDER ~ 5

B. <u>Substantial Prejudice</u>

The Ninth Circuit holds that government intrusion on the attorney-client relationship violates the Sixth Amendment only if such interference "substantially prejudices" the defendant. *Williams v. Woodford,* 306 F.3d 665, 683 (9th Cir. 2002). "Substantial prejudice results from the introduction of evidence gained through the interference against the defendant at trial, from the prosecution's use of confidential information pertaining to defense plans and strategy, and from other actions designed to give the prosecution an unfair advantage at trial." *Danielson,* 325 F.3d at 1069.

Some circuits adopt a *per se* rule that a criminal defendant's proof of mere possession of improperly obtained trial strategy constitutes proof of prejudice. *See, e.g., Briggs v. Goodwin,* 698 F.2d 486, 494-95 (D.C. Cir. 1983). The Ninth Circuit holds otherwise, implementing a two-step analysis to demonstrate prejudice. Under step one, the defendant must make a "prima facie showing of prejudice." *Danielson,* 325 F.3d at 1071. In satisfying step one, the government must act affirmatively to intrude the attorney-client relationship and thereby obtain privileged information. *Id.* Under step two, the burden shifts to the government to show that there has been no prejudice to the defendant as a result of these communications. *Id.* (citations omitted). In satisfying step two, the government must present evidence, and must show by a preponderance of that evidence, that "all of the evidence it proposes to use," and all of its trial strategies, were "derived from legitimate independent sources." *Id.* at 1072. If the government fails to meet its burden under step two, the defendant suffered prejudice. *Id.*

ORDER ~ 6

Here, no prejudice occurred. The copied materials did not contain privileged information. Even if they did, the copied materials' contents were never disclosed to the Government. Defendant's motion is properly denied.

### III. Conclusion

Accordingly, **IT IS HEREBY ORDERED**: Defendant's Motion to Dismiss for Violation of Sixth Amendment Right to Counsel **(Ct. Rec. 33)** is **DENIED.**

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and to provide copies to all counsel.

**DATED** this ___8th___ day of August 2008.

> S/ Edward F. Shea
> EDWARD F. SHEA
> United States District Judge

Q:\Criminal\2008\6044.Deny.Dismiss.wpd

ORDER ~ 7